UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

NAJM UR-REHMAN KHAN,

Petitioner,

v.

KEVIN RAYCRAFT et al.,

Respondents.

_____/

Case No. 1:26-cv-01038

HON. ROBERT J. JONKER

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at North Lake Processing Center in Baldwin, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (ECF No. 1).  For the following reasons, the Court will deny the petition for a writ of habeas corpus under 28 U.S.C. § 2241.

## **BACKGROUND**

Petitioner is a native and citizen of Pakistan. (ECF No. 1, PageID.5; ECF No. 6-1, PageID.55).  In 2001, he was admitted to the United Staes on a visa, which, after some adjustments, allowed him to stay until October 2005. (ECF No. 6-1, PageID.55, 58). Petitioner, however, did not depart the United States when his visa expired. (*Id.*). Instead, he continued to reside in the United States with his family. (ECF No. 1, PageID.6).

In January 2020, Petitioner pled guilty to conspiracy to commit heath care and wire fraud—a felony under multiple federal statutes—in the Eastern District of Michigan. (ECF No. 1,

PageID.6). For that offense, he was sentenced to 24 months imprisonment and ordered to pay approximately 6 million dollars in restitution. (ECF No. 6-1, PageID.64).

A few years later, in March 2023, DHS charged Petitioner with removability for overstaying his visa, in violation of 8 U.S.C. § 1227(a)(1)(B), and for being convicted of a felony fraud offense, in violation of 8 U.S.C. § 1227(a)(2)(A)(iii). (ECF No. 1, PageID.6; ECF No. 6-1, PageID.64). DHS detained Petitioner under 8 U.S.C. § 1226(c), which mandates detention of aliens who were convicted of certain offenses. (ECF No. 1, PageID.7). In July 2023, an immigration judge ordered Petitioner removed to Pakistan. (ECF No. 6-1, PageID.72). Petitioner, however, appealed that decision to the BIA, which remains pending.

In October 2023, DHS released Petitioner from immigration detention.[1] (ECF No. 1, PageID.7). He remained on release until September 9, 2025, when DHS officials redetained him. (*Id.*).  He is now being held at North Lake Processing Center, in Baldwin, Michigan. (*Id.* at PageID.2).

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, among other things, assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner or provide him with a bond hearing.  (ECF No. 1, PageID.10-11).  In an order entered on April 2, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted.  (ECF No. 3).  Respondents

---

[1] Respondents contend, and the record shows, that DHS's decision to release Petitioner was erroneous. Petitioner was released under a form of conditional parole under 1226(a). (ECF No. 6-1, PageID.77). But that form of relief is not available to aliens, like the Petitioner, who are prescribed detention under 1226(c).

filed their response on April 23, 2026,[2] (ECF No. 5), and Petitioner filed his reply on April 10, 2026, (ECF No. 4).

## HABEAS CORPUS LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025).

## DISCUSSION

The Court has reviewed immigration detainee petitions and granted habeas relief in hundreds of recent cases challenging Respondents' application of a Section 1225 mandatory detention regime to people like Petitioner here, who should be handled under the discretionary detention regime of Section 1226. This is not such a proceeding. To the contrary, the parties agree that Petitioner is mandatorily detained under Section 1226(c). (ECF No. 1, PageID.8; ECF No. 6-1, PageID.47). Petitioner does not argue that this was an improper application of 1226(c). The only question before the Court is whether Petitioner's current 8-month detention violates Petitioner's Fifth Amendment due process rights. The Court concludes that they do not.

Start with where the parties agree. Through 8 U.S.C. § 1226(c), Congress imposed mandatory detention for aliens that are deemed "inadmissible by reason of having committed any

---

[2] Respondents acknowledge that their response is untimely. They move for the Court to accept their untimely response under FRCP 6(b)(1)(B). (ECF No. 5). Based on the Respondents' explanation, the Court is satisfied that there is good cause to extend the Respondents' response deadline under these circumstances. Accordingly, Respondents Motion for Leave to file Untimely Response is **GRANTED**.

offense covered in section 1182(a)(2) of this title," which includes crimes of "moral turpitude." *See Demore v. Kim*, 538 U.S. 510, 517 (2003). Unlike 1226(a), section 1226(c) does not provide the alien with an opportunity for release after a bond hearing.[3] As the Petitioner acknowledges, his conviction for conspiracy to commit health care and wire fraud qualified as a "crime of moral turpitude" such that section 1226(c) applies. Petitioner detention under 1226(c), then, is not only authorized by Congress but actually required by it. Likewise, Congress dictated that Petitioner should not be released on bond.

But even when detention is statutorily mandated, the Court may still review the constitutionality of the overall statutory scheme Congress has created.  *Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review," and does not bar a "constitutional challenge to the legislation authorizing his detention without bail."). In this specific context, the Supreme Court has held that "[d]etention during removal proceedings is a constitutionally permissible part of that process," *Demore*, 538 U.S. at 517, though fat one least Justice has also suggested that if continued pre-removal detention becomes "unreasonable," it would likely become unconstitutional. *Id.* at 532 (Kennedy, J., concurring); *see also German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210-11 (3d Cir. 2020); *cf. Zadvydas v. Davis*, 533 U.S. 678, 699-701 (2001).

When assessing whether a statutorily authorized detention, like those under 1226(c), becomes unreasonable, Supreme Court precedent demonstrates that one of the most important factors for courts to consider is the length of time the detention has lasted.  In *Zadvydas*, for example, the Court considered the constitutionality of detention under 8 U.S.C. § 1231(a)(6), which applies to detainees who are subject to a final order of removal.  533 U.S. 678, 682 (2001).

---

[3] In fact, through 1226(c)(4), Congress authorized release in only very narrow circumstances related to witness protection. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

Although the statute permitted detention "beyond the removal period," the Court emphasized that indefinite detention would become constitutionally problematic at a certain point after removal no longer seemed reasonably foreseeable. *Id.* at 699.  The Court declined to identify a fixed point in time at which further detention would be impermissible, but it designated six months as a "presumptively reasonable period" of time for the detention to last. *Id.* at 701.

A few years later, in *Demore*, the Supreme Court addressed the constitutionality of Section 1226(c)—the specific provision that controls Petitioner's current detention. 538 U.S. at 531. In *Demore*, the petitioner—who, much like the Petitioner in this case, had been detained for just over six months—argued that mandatory detention under 1226(c) was unlawful.  *Id.* The Court disagreed and concluded that as written, the statute was constitutional because "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* The Court emphasized that such mandatory detentions tend, on average, to be quite short. *Id.* at 529–30.  The record showed that most § 1226(c) detentions concluded within a few months, with the majority lasting less than the six-month period that the Court had recognized as presumptively reasonable in *Zadvydas*. *Id.*  And although the Court expressly relied on this fact to conclude that the statute was constitutional, it appeared to have no trouble concluding that the petitioner's "somewhat longer than average" six-month detention was constitutional.  *Id.* at 531. Justice Kennedy's concurrence suggested, however, that if the petitioner's detention became "unreasonable," he may eventually be entitled to a bond hearing. *Id.* at 532 (Kennedy, J., concurring).

Since *Demore*, several circuits have expounded on its holding and have continued to emphasize that the length of time the petitioner has been detained is one of the most important factors to consider when determining whether detention during removal proceedings is constitutional. *See, e.g.*, *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 212

5

(3d Cir. 2020) (granting relief after the petitioner had been detained for two-and-a-half years); *Black v. Decker*, 103 F.4th 133, 137–38 (2d Cir. 2024);  *cf. Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 29 (1st Cir. 2021). Generally, courts recognize that mandatory detention under 1226(c), which covers a narrow subset of individuals with criminal convictions, addresses unique obstacles that arise during removal proceedings for those particular individuals. *See Demore*, 538 U.S. at 528; *Hernandez-Lara v. Lyons*, 10 F.4th at 36 (noting the differences between 1226(a) and 1226(c)). For that reason, in the 1226(c) context, unlike in the post-removal *Zavydas* context, courts typically find that "pre-removal detentions spanning a period of months do not present substantial constitutional issues," whereas once "periods of detention . . . exceed one year," relief might be warranted. *See Tkochenko v. Sabol*, 792 F. Supp. 2d 733, 740-41 (M.D. Pa. 2011); *compare Aguayo v. Martinez*, No. 120CV00825DDDKMT, 2020 WL 2395638, at *3-4 (D. Colo. May 12, 2020) (holding that a 9-month detention under 1226(c) was not unconstitutional), *with Diomande v. Wrona*, No. 05-73290, 2005 WL 3369498 (E.D. Mich. Dec. 12, 2005) (granting relief where petitioner was detained for 2 years).

Circuit courts have also emphasized that other factors may affect whether detention is unreasonable. For example, courts may also assess whether the detention is likely to continue, or whether the reasons for the delay are due to actions taken by the petitioner or by the government. *German Santos*, 965 F.3d at 212 (quoting *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015)). But although these cases suggest multiple factors to consider, they demonstrate that, at bottom, determining whether a period of detention has become unreasonable is largely a matter of discretion for the district court.

In this case, the duration and circumstances of Petitioner's detention do not yet create a constitutional problem. To begin, the length of detention in this case is not unreasonably long. True, Petitioner's has been detained for almost 8 months, which is outside *Zadvydas*'s preemptively constitutional six-month window. But the six-month period discussed in *Zadvydas* was not referred to as a hard limit on the length of time that an alien may be detained but was rather offered as presumptively reasonable period before which courts should not call into question the Executive's discretionary decision to keep an alien in detention.  533 U.S. at 701 ("This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.").  Even more persuasively, *Zadvydas* dealt with detainees who were subject to final orders of removal. The Petitioner in this case, however, is still in removal proceedings where detention "serves" a different "purpose" and has a clear end date. *Demore*, 538 U.S. at 528. Petitioner's 8-month detention is also only slightly longer than the "somewhat longer than average" 6-month detention that the *Demore* court had no trouble upholding as constitutional. Likewise, other courts have found that, under similar or even longer detention periods, detention is not unreasonably long under 1226(c). *See Aguayo v. Martinez*, 2020 WL 2395638 (9-month detention). At this point, then, nothing shows that Petitioner's detention has reached a constitutionally unreasonable length.

The other factors also do not weigh against continued detention. For one, detention seems unlikely to continue indefinitely. Petitioner's removal proceedings are almost complete—the IJ already issued a removal order. The only remaining pre-removal proceeding is Petitioner's pending appeal. Once the BIA decides that motion, detention under 1226(c) will cease. If the BIA affirms the immigration judge's removal order, it will, at that point, become administratively final such that Section 1231 applies and Respondents can begin to facilitate Petitioner's removal. Moreover,

it does not appear that DHS has unreasonably contributed to any delay.  DHS actively sought removal throughout the process. There is no evidence that DHS took any action to extend or delay Petitioner's detention. In fact, Petitioner acknowledges that DHS "did not file a brief in opposition to his appeal." (ECF No. 1, PageID.7). Because Respondents are not responsible for any delays in this case, at this point, this factor also weighs against relief. *See Demore*, 538 U.S. at 531-32 (Kennedy J., concurring) (noting that the "unreasonable detention" assessment is an attempt to determine whether the "ultimate purpose behind the detention is premised upon the alien's deportability" or is instead "not to facilitate deportation . . . but to incarcerate for other reasons"). Although 8 months of detainment may be "longer than average" during pre-removal proceedings, at this point, nothing suggests that it has become unreasonable or that the Respondents are holding Petitioner for non-removal related reasons. *See Demore*, 538 U.S. at 531.

Accordingly, at present, Petitioner's detention does not violate the Constitution.  Should circumstances materially change—whether because delays continue to accumulate, or the detention becomes unreasonably prolonged for some other reason—the petitioner remains free to file a new § 2241 petition asserting an as-applied challenge at that time.

### Conclusion

For the reasons discussed above, the Court will enter a judgment dismissing Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.


Dated:   May 7, 2026                              /s/ Robert J. Jonker
                                                  Robert J. Jonker
                                                  United States District Judge